UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JACOB BROWN, )<br>)<br>　　　　　Plaintiff, )<br>)<br>v. )<br>)<br>TERESA MARIE IV, INC., and )<br>ATLANTIC TRAWLERS FISHING, INC. )<br>)<br>　　　　　Defendants. ) | Docket No. 05-CV-186-P-S |

**ORDER ON CROSS MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Cross Motion for Summary Judgment (Docket # 22).  Through this Motion, Defendants seek a limitation of liability in accord with the Limitation of Liability Act of 1851 ("the Act"), 46 U.S.C. § 30505 (2007) (formerly codified as 46 U.S.C. app. § 183).  For the reasons explained below, the Court DENIES this Motion.

**I.　　SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law."  Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). The mere existence of cross motions for summary judgment generally does not change the method for construing the facts. See Leahy v. Raytheon Co., 315 F.3d 11, 17 n.5 (1st Cir. 2002).

## II.    BACKGROUND

The F/V Teresa Marie IV sank in the early evening hours of October 10, 2002, in fair weather, with negligible seas and wind and good visibility. At the time she sank, the vessel was approximately one hundred miles south of Southwest Harbor, Maine and on her return voyage after completing fishing operations. The F/V Teresa Marie IV was a ninety-five foot steel hull fishing vessel, at all times owned by Defendant Teresa Marie IV, Inc. Defendant Atlantic Trawlers Fishing, Inc. provided maintenance and management services for the F/V Teresa Marie IV. On her last voyage, the Captain of the vessel was Michael Lawless, Jason Forbes was the engineer and Jacob Brown was employed as a crewman.

At the time she sank, the F/V Teresa Marie IV was rigged for herring fishing and engaged in pair trawling with the F/V Jean McCauslin. During pair trawling, the F/V Teresa Marie IV would tow the ends of a net carried by the larger vessel, the F/V Jean McCauslin. Although the F/V Teresa Marie IV did not always load fish on these voyages, on the trip in which she sank, Captain Lawless had loaded the F/V Teresa Marie IV with fish prior to heading for port.

During the return voyage, Captain Lawless retired from the pilothouse to his quarters and Forbes took watch. After approximately a half-hour, Forbes woke the Captain and informed him that there may be a problem. Forbes had noticed water in the starboard stern of the F/V Teresa Marie IV where there had never been water. In the half-hour that the Captain was absent from the pilothouse, the vessel had settled eight to ten inches further in the water. The starboard ballast tank was pumped for ten minutes, but the position of the vessel did not change. The Captain and crew attempted to save the vessel to no avail. Either Captain Lawless or Forbes contacted the U.S. Coast Guard and the F/V Jean McCauslin. From the recollections of all aboard the vessel, the F/V Teresa Marie IV sank within fifty minutes. All three men on board were rescued by the U.S. Coast Guard.

On September 29, 2005, Plaintiff Jacob Brown filed a three count complaint (Docket # 1) asserting causes of action for Jones Act negligence, unseaworthiness and maintenance and cure. On October 13, 2006, Brown filed a motion for partial summary judgment (Docket # 13) on the issue of unseaworthiness based on an alleged presumption of unseaworthiness when a vessel sinks in fair weather and not from a peril of the sea. Defendants responded by filing the motion presently before the court, the Cross Motion

for Summary Judgment based on the Limitation of Liability Act (Docket # 22). With the consent of Defendants, Plaintiff then withdrew the motion for partial summary judgment (Docket #s 23, 24 and 28). Thus, the Court is left with Defendants' Cross Motion for Summary Judgment seeking a limitation of liability, which despite its title, is now simply a motion for partial summary judgment.

### III.  LIMITATION OF LIABILITY ACT

The Act cabins the liability of a shipowner for the negligence or unseaworthiness of a vessel that causes injury. The Act provides that "the liability of the owner of a vessel for any claim, debt, or liability . . . shall not exceed the value of the vessel and pending freight" provided that the "act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, [was] without the privity or knowledge of the owner." 46 U.S.C. § 30505.

Motions to limit liability under the Act lend themselves to a bifurcated analysis. See Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999); Joia v. Jo-Ja Service Corp., 817 F.2d 908, 912 (1st Cir. 1987). "First, the court must determine whether negligence or unseaworthiness caused the accident." Carr, 191 F.3d at 4. In this first stage, the claimant bears the burden of establishing negligence or unseaworthiness by a preponderance of the evidence. Id.

Once negligence or unseaworthiness has been established, the court must determine whether the shipowner maintained privity or had knowledge of the causative agent.[1] See id. Where a corporation owns the vessel, "the test is whether culpable

---

[1] The First Circuit has stated that "privity or knowledge" "usually implies some degree of culpable participation or neglected duty on the shipowner's party: that, for example, it committed a negligent act, or knew of an unseaworthy condition but failed to remedy it, or through the exercise of reasonable diligence could have prevented the commission of the act or the onset of the condition." Carr, 191 F.3d at 4; see also

participation or neglect of duty can be attributed to an officer, managing agent, supervisor, or other high-level employee of the corporation." Id.; see also Joia, 817 F.2d at 912-13 ("In the context of the corporate shipowner . . . the privity and knowledge scrutiny focuses not only on what the corporate owner knows, but also on what the corporate owner should have known."). In this second stage, the shipowner maintains the burden of establishing lack of privity or knowledge by a preponderance of the evidence. Carr, 191 F.3d at 4 ("If the claimant succeeds in that first-stage endeavor, the burden then shifts to the shipowner to establish its lack of privity and knowledge."). The shipowner must "undertake to prove that, whatever the cause of the loss, he was ignorant of it; that burden he undertakes, with all the possibilities which it may involve." Id. (quoting The S.S. Hewitt, 284 F. 911, 912 (S.D.N.Y. 1922)). The shipowner, however, "need not go over the possibilities, item by item." Id. (internal quotations removed).

Where the first stage has established a specific showing of negligence or unseaworthiness, the shipowner must establish that he or she was without knowledge or privity as to the specific cause of the injury. See id. at 5-6; Joia, 817 F.2d at 912. Where, however, there is a general showing of unseaworthiness "the shipowner's proof concerning privity and knowledge suffices as long as the shipowner shows by a fair preponderance of the evidence that it took appropriate steps to ensure, and reasonably believed, that 'the ship was well found, properly manned, and staunch, tight, and adequately equipped.'" Carr, 191 F.3d at 6 (quoting The S.S. Hewitt, 284 F. at 912.). Thus, "the specificity of the claimant's proof in the first stage of the [Limitation of Liability] proceeding determines the level of specificity at which the defendant's second-

---

Coryell v. Phipps, 317 U.S. 406, 411 (1943) (stating that privity is commonly held to mean "some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury").

stage proof must operate." Id. With this general background, the Court considers whether any genuine issue of material fact exists to prevent summary judgment.

## V.   DISCUSSION

Defendants, Teresa Marie IV, Inc. and Atlantic Trawlers Fishing, Inc., both assert that they are entitled to the protections of the Act on summary judgment and seek to limit their liability to the value of the F/V Teresa Marie IV at the end of the voyage on October 10, 2002. First, the Court notes that by the very terms of the statute, the Act applies only to the owner of a vessel. See 46 U.S.C. § 30505 ("the liability of the owner of a vessel for any claim"); see also Joia, 817 F.2d at 912 ("the liability of the owner shall not exceed the value of the vessel"). Defendant Atlantic Trawlers Fishing, Inc. provided maintenance and management services for the F/V Teresa Marie IV; it did not own or operate the vessel. Therefore, Atlantic Trawlers Fishing, Inc. is not entitled to a limitation of liability under 46 U.S.C. § 30505 as a matter of law. On this basis, the Court denies Atlantic Trawlers Fishing, Inc.'s claim for summary judgment.

Second, the Court notes that claims for maintenance and cure are exempt from limitations on liability. In re RJF Int'l Corp., 354 F.3d 104, 107 (1st Cir. 2004) ("maintenance and cure is exempt from the limitation of liability rules in admiralty"). Thus, even Teresa Marie IV, Inc. is not entitled to limit liability on the claim for maintenance and cure. This leaves only the claims for Jones Act negligence and unseaworthiness before the Court for a possible limitation of liability.

In Limitation of Liability proceedings, the first stage of the bifurcated analysis is for the Court to determine whether negligence or unseaworthiness caused the F/V Teresa

Marie IV to sink.[2] Carr, 191 F.3d at 4. In opposing the pending motion, Plaintiff has put forward multiple specific assertions of unseaworthiness. The Court considers each specific assertion in turn. In undertaking this analysis, the Court is mindful that the level of specificity at the first stage of the analysis determines the level of specificity at the second stage of the analysis. Id. at 6. At trial, Plaintiff will have the burden of proving the first stage by a preponderance of the evidence. Id. at 4. The Court cannot make the appropriate determination on summary judgment and move to the second stage of the analysis unless "there is no issue as to any material fact" regarding the first stage of the analysis. Fed. R. Civ. P. 56(c).

Under federal admiralty law, a shipowner has an absolute duty to provide a seaworthy vessel. Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996) (providing that a shipowner has an "absolute duty to provide every member of his crew a vessel and appurtenances reasonably fit for their intended use"). The duty includes maintenance of the ship and her equipment in a proper operating condition and extends beyond the physical integrity of the vessel to include "the procedures crew members are instructed to use for assigned tasks." Cape Fear, Inc. v. Martin, 312 F.3d 496, 500 (1st Cir. 2002). In addition, the vessel must be "reasonably fit to carry the cargo which she has undertaken to transport." Id. (quoting The Silvia, 171 U.S. 462, 464 (1898)). Thus, "if a vessel is loaded so heavily that she cannot safely sail on the voyage contracted for, she is unseaworthy." Id. (citing 2A Benedict on Admiralty § 67).

On board the F/V Teresa Marie IV was a booklet ("the stability booklet") that contained instructions and diagrams regarding the proper manner to load the vessel to

---

[2] It is undisputed that nothing weather related caused the vessel to sink. Further, the F/V Teresa Marie IV did not collide with anything. In addition, between 2000 and October 2002, the F/V Teresa Marie IV received annual maintenance.

maintain stability. The stability booklet, which was specifically tailored for F/V Teresa Marie IV, required a minimum freeboard[3] of over three feet. The Captain, Michael Lawless, was responsible for the loading of the vessel. When the vessel was loaded with fish but prior to beginning the return voyage, the vessel had upwards of one foot of freeboard. While the vessel was underway, she had between eight and ten inches of freeboard. Plaintiff's expert, David Wyman, asserts that the observed level of freeboard was in direct contradiction to that required by the stability booklet. Nonetheless, Captain Lawless reported that he observed no symptoms of overloading, such as sluggish handling or failure to right itself on a roll. Given the conflicting evidence, the Court is unable to state whether the vessel was in fact overloaded, and if so, how the overloading contributed to the vessel's demise. Nonetheless, Plaintiff has come forward with sufficient evidence to create a trialworthy issue as to whether the alleged overloading rendered the vessel unseaworthy. See Cape Fear, Inc., 312 F.3d at 501 (considering a stability book's statement of safe freeboard in determining that a vessel was unseaworthy based on overloading). Whether overloading of the vessel caused the sinking is thus a genuine issue of material fact that precludes summary judgment.[4]

Additional disputes exist with regard to the ballast tanks, the shaft alley and the stuffing box. While pair trawling, the ballast tanks must have been full in order to tow the net. When the vessel was loaded with fish, however, the stability booklet required the ballast tanks to be empty. Nonetheless, Wyman testified that in order for the vessel to sit

---

[3] Freeboard is the distance from the water line to the deck of the vessel. See Cape Fear, Inc., 312 F.3d at 501.

[4] Through the motions and responses, the parties focused on unseaworthiness and marginally addressed negligence. The Jones Act, 46 U.S.C. § 688, allows seamen to "maintain an action where an employer's failure to exercise reasonable care causes a subsequent injury even where the employer's negligence did not render the ship unseaworthy." Ferrera, 99 F.3d at 453. Nonetheless, the Court similarly finds that genuine issues of material fact exist as to whether the owner was negligent in failing to train the Captain and crew in the proper procedures to safely load the vessel.

as low as she did in the water after being loaded, the ballast tanks must have been full. Captain Lawless, however, remembers the ballast tanks being empty at the time the vessel sank. The Court is left with conflicting evidence and inferences as to the status of the ballast tanks and the procedures used by the captain and crew with regard to ballasting the vessel. Because the procedures used by a crew can, in and of themselves, create an unseaworthy condition, the condition of the ballast tanks and the procedures utilized for filling and emptying the ballast tanks also raise a genuine issue of material fact. See Cape Fear, Inc., 312 F.3d at 500.

The duty of seaworthiness also includes the physical integrity of the vessel and its equipment. Ferrera, 99 F.3d at 453 ("The duty includes maintaining the ship and her equipment in a proper operating condition, and can be breached either by transitory or by permanent defects in the equipment."). On the trip before the F/V Teresa Marie IV sank, Captain Lawless believed the shaft alley, which holds the stuffing box,[5] was taking on a little more water than usual and causing the high water alarm to sound. When the F/V Teresa Marie IV arrived in port from that trip, Forbes informed Daniel Wong,[6] the shore engineer, that water was entering the shaft alley. Wong replied that he would address the issue. It was Wong's practice to inform the Captain when he performed maintenance on a ship's stuffing box. Captain Lawless never spoke to Wong regarding the leak in the stuffing box, and the high water alarm sounded the evening before the F/V Teresa Marie IV left port on its final voyage. Drawing all reasonable inferences in Plaintiff's favor, the Court is left with the inference that the shaft alley and stuffing box were not addressed

---

[5] The stuffing box is the seal that prevents too much water from entering the vessel from where the shaft leaves the hull of the vessel. The stuffing box must allow some water to enter the shaft because the water lubricates and cools. Thus, regular maintenance of the stuffing box on a fishing vessel is required.
[6] Wong was employed by Defendant Atlantic Trawlers Fishing, Inc.

prior to the F/V Teresa Marie IV's final voyage. The question of the vessel's physical integrity and possible negligence in the failure to address a known problem are genuinely disputed issues material to the outcome of the case.

Furthermore, Wyman asserts that the excess leakage and added pressure on the stuffing box could have contributed to the vessel's sinking, but George Randall, Defendants' expert, asserts that the shaft alley is a relatively small space on a vessel and the trim of the vessel would be minimally affected if the shaft alley flooded. Given the conflicting evidence regarding the stuffing box and the shaft alley and whether they contributed in any way to the sinking of the F/V Teresa Marie IV, a genuine issue of material fact exists to further preclude summary judgment. See id. (providing that the absolute duty to provide a seaworthy vessel includes the duty to maintain the physical integrity of the vessel).

In short, Plaintiff has created a trialworthy issue of fact with respect to at least three specific problems (i.e., overloading, the ballast tanks and the shaft alley and/or stuffing box). Based on the current record, a reasonable jury might find one or more of these problems caused the sinking of the F/V Teresa Marie IV. Defendants' expert asserts that it is impossible to pinpoint the cause of the F/V Teresa Marie IV's sinking while Wyman asserts that it is not only possible, but was foreseeable to the corporation. The Court notes, however, there is conflicting expert testimony and evidence that goes to the very core of the first stage of the analysis.

At this point, the Court is unable to state with specificity what caused the accident with the F/V Teresa Marie IV, which prevents the Court from moving to the second stage of the analysis. See Joia, 817 F.2d at 913. Given the genuine issues of material fact,

summary judgment is not appropriate here.  Further, "'unseaworthiness' is normally a question of fact to be determined by the jury." Jordan v. U.S. Lines, Inc., 738 F.2d 48, 50 (1st Cir. 1984).  In moving for summary judgment, Defendants rely heavily upon Carr v. PMS Fishing Corporation, 191 F.3d 1 (1st Cir. 1999).  In Carr, however, the parties stipulated that the vessel was unseaworthy when the mishap occurred. Id. at 4.  There has been no such stipulation in this case.  Here, the Court finds that Plaintiff has met his burden to bring forward evidence showing that genuine issues of material fact exist that preclude summary judgment.

### IV. CONCLUSION

For the reasons explained herein, the Court DENIES Defendants' Cross Motion for Summary Judgment (Docket # 22).

**SO ORDERED.**

/s/ George Z. Singal
Chief United States District Judge

Dated at Portland, Maine, this 28th day of February, 2007.